# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| ALLEN GARRARD, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 19-836 |
| RUST-OLEUM CORPORATION | ) ) | **JURY TRIAL DEMANDED** |
| Serve at: 11 Hawthorn Parkway Vernon Hills, IL 60061 | ) ) ) ) | |
| Defendant. | ) | |

## CLASS ACTION COMPLAINT

Plaintiff brings the following Complaint against Rust-Oleum Corporation ("Rust-Oleum") related to the company's marketing and sale of Rust-Oleum Restore products, specifically Rust-Oleum Deck Start Wood Primer, Restore 2X One Coat Solid Stain, and Restore 4X Deck Coat (collectively "Restore Products"). In support of his Complaint, Plaintiff respectfully submits the following:

## NATURE OF THE CASE

1.      Plaintiff brings this proposed class action on behalf of himself and all other Missouri consumers who purchased Restore Products.

2.      Rust-Oleum sold Restore Products to Missouri consumers for the purpose of resurfacing wooden structures, but the company misrepresented, omitted, and concealed material information concerning the efficacy of Restore Products, including (1) Restore Products are more prone to chipping, peeling, and flaking than comparable wood resurfacing products; (2) Restore Products do not last longer than comparable products and, instead, they deteriorate more quickly

1

than comparable products; and (3) Restore Products do not provide enhanced protection that is superior to comparable products despite a premium price charged for Restore Products.

3.      Rust-Oleum sold Restore Products with full knowledge of these conditions, yet did not disclose them to consumers. In this respect, Rust-Oleum has concealed and omitted material facts in violation of the law.

4.      Rust-Oleum's conduct harmed consumers. Rust-Oleum charges a premium for its products, and consumers pay enhanced prices for Restore Products. Moreover, consumers have not received the benefit of their bargain in that they have not received the product they purchased.

## PARTIES

5.      Allen Garrard is a citizen and resident of Cass County, Missouri.

6.      Rust-Oleum Corporation is an Illinois corporation with its principal place of business in Vernon Hills, Illinois. Rust-Oleum Corporation is owned by RPM International, Inc.

## JURISDICTION AND VENUE

7.      This Court has subject-matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d). There are at least 100 members in the proposed class, the aggregated claims of the individual class members exceed the sum or value of $5,000,000, and this is a class action in which Rust-Oleum and class members are citizens of different states.

8.      This Court may exercise jurisdiction over Rust-Oleum because the company has sufficient minimum contacts in Missouri, and intentionally avails itself of the markets within Missouri through the promotion, sale, marketing, and distribution of Restore Products, thus rendering the exercise of jurisdiction by this Court proper and necessary. Moreover, Rust-Oleum's wrongful conduct foreseeably affects consumers in Missouri.

2

9. Additionally, Plaintiff purchased his Restore Products in the State of Missouri, and suffered damages as a result of Rust-Oleum's conduct within Missouri.

## FACTUAL ALLEGATIONS

### *Plaintiff's Purchase and Experience with Restore Products*

10. In June 2017, Plaintiff purchased his Restore Products at the Sutherland's store located in Cass County, Missouri.

11. Plaintiff purchased several Restore Products, including Restore Deck Start Wood Primer, Restore 2X, and Restore 4X.

12. Plaintiff purchased four gallons of Restore Deck Start Wood Primer; Plaintiff paid $37.89 for each gallon.

13. Plaintiff purchased four gallons of Restore 2X; Plaintiff paid $33.97 for each gallon.

14. Plaintiff purchased three one-gallon containers of Restore 4X; Plaintiff paid $34.25 for each gallon.

15. Plaintiff also purchased one five-gallon container of Restore 4X; Plaintiff paid $137 for the container.

16. In total, Plaintiff spent $527.19 on Restore Products.

17. Plaintiff completed applying the Restore Products to his cedar wooden deck in September 2017.

18. By May 2018, the Restore Products already were detaching from several spots on the deck. Plaintiff repaired those spots.

19. By January 2019 – less than two years after application – the Restore Products were detaching, peeling, and flaking in several locations on the floor and railings of the deck.

3

20.    Below are a series of illustrative photographs of Plaintiff's deck; the pictures were taken in August 2019:






21.    Indeed, several of the photos reveal moisture, bubbling, and even plant-life growing from where Plaintiff applied Restore Products:

4





***Rust-Oleum's Marketing of Restore Products***

22.     According to Rust-Oleum's Technical Data, Restore 4X "is a high build, water based acrylic coating designed to resurface aged wood and concrete decks, patios, and walkways.

5

The high build finish provide[] slip resistance and can bridge over or fill small cracks, checks, nail holes, or other minor surface defects."[1]

23.     Rust-Oleum markets its Restore 4X product as the "Ultimate Refinish" that is "4X thicker than ordinary paint" and a "premium ultra solid coating." According to Rust-Oleum, Restore 4X "[r]efinishes weathered surfaces" and "[c]onceals hairline cracks." Restore 4X purports to provide "[s]uperior coverage" and "long lasting protection."[2]

24.     Similarly, Rust-Oleum markets its Restore 2X as being "2X thicker than ordinary paint" that "requires only one coat for total coverage."[3]

25.     According to Rust-Oleum, Restore 2X provides "superior water repellency" with special "algae and mildew resistant coating."[4]

26.     Restore 2X also purportedly has "NeverWet Properties Inside" designed to "extend[] the life of your deck."[5]

27.     Plaintiff also purchased and applied Restore Deck Start Wood Primer. Restore Deck Start Wood Primer is a compatible product with Restore 4X and Restore 2X.

28.     The label of Deck Start Wood Primer states that it "simplifies prep & promotes topcoat adhesion;" Rust-Oleum's marketing materials make the same assertion.[6]

29.     According to Rust-Oleum, the Deck Start Wood Primer does not require "sanding or stripping" and it "works with any solid topcoat."[7]

---

[1]
    https://www.rustoleum.com/~/media/DigitalEncyclopedia/Documents/RustoleumUSA/TDS/English/CBG/Restore/RST-07_Restore_4X_Deck_Coat_TDS.ashx
[2]    *See* https://www.rustoleum.com/product-catalog/consumer-brands/restore/restore-4x-deck-coat
[3]    https://www.rustoleum.com/product-catalog/consumer-brands/restore/restore-2x
[4]    *Id.*
[5]    *Id.*
[6]    https://www.rustoleum.com/product-catalog/consumer-brands/restore/restore-deck-start-wood-primer
[7]    *Id.*

30. Rust-Oleum also asserts that Deck Start Wood Primer "works on weathered and worn wood."[8]

31. As outlined above, Rust-Oleum's representations are false because Restore Products:

    a. Separate, crack, peel, bubble, flake, pucker, chip and otherwise prematurely fail shortly after application;

    b. Are not superior to ordinary deck paint or stain;

    c. Cannot withstand harsh weather;

    d. Do not provide "superior water repellency"; and

    e. Do not contain special "algae and mildew resistant coating."

32. Similarly, Rust-Oleum knew about these conditions related to Restore Products and omitted the information and/or concealed it from consumers.

### Rust-Oleum's Knowledge

33. Rust-Oleum knew or should have known about the defects in its Restore Products. Indeed, Rust-Oleum previously defended litigation concerning several offerings within its Restore family of products.

34. In *In re: Rust-Oleum Restore Marketing Sales Practices and Products Liability Litigation*, the company faced accusations similar to those here: that the company's marketing of its Restore products misrepresented the efficacy of the products, and omitted and concealed material facts related to their functionality.[9]

---

[8]     *Id.*

[9]     The case was multi-district litigation in the U.S. District Court for the Northern District of Illinois (MDL No. 2602). Rust-Oleum settled the claims in its Restore MDL in 2016.

35.     Although technically the MDL encompassed different Restore products than those at issue here, the claims in that case also concerned the products' adhesive qualities and durability, superiority to other products, and ability to withstand flaking, bubbling, and peeling.

36.     Thus, the earlier litigation put Rust-Oleum on notice about the quality of its Restore products, and the company knew or should have known about the defects in its other Restore products, including those at issue here.

### *Consumer Complaints About Rust-Oleum's Products*

37.     Customer complaints about Rust-Oleum's products are rampant, demonstrating that Plaintiff's experience with Rust-Oleum's products is not unique.

38.     In late September 2019, one customer wrote: "I bought the Restore 4x and applied it in October 2016 (I live in Florida). Fast forward 2 years and my deck has started to peel and crack. Horrible product. Pressure washed the deck a month ago and 1/3 of the paint just blew off. Ugghhhhhh. I won't be buying this product again…"[10]

39.     Another customer wrote:

> Rust-oleum Restore DO NOT USE THIS PRODUCT IT IS TERRIBLE! Unfortunately I didn't take heed of all the negative reviews on the failure of this product. early summer of 2018 I prepped my deck as the instructions said and applied it to the deck. Looked great all summer but early spring 2019 I could see how the finish starting to flake off from spots all over. It was not in any particular place and not in well used spots. The pictures I have added to this post were taken today 09/08/19. There are areas all over the deck that have flaked off. I have no idea what I'm going to do it looks awful. I understand there is a class action suit against Rust-oleum for the failure of this product and wish I could get some kind of resolve from the company to fix this mess.[11]

---

[10]     https://www.deckstainhelp.com/class-action-lawsuit-against-rust-oleum-deck-restore/#more-7196 (Casie P.).

[11]     *Id.* (Robert F.).

40.     Another customer wrote in September 2019: "This stuff has ruined our deck! Now to try to remove it after we spent all that $$! Ugh!"[12]

41.     Another customer wrote in September 2019: "Wow, We have same problem, put on 3 years ago . Started peeling & cracking last year was going to touch it up but couldn't get that same stuff at home depot. So here we are slowly getting it up trying this & trying that only to find many rotten pressure treated 5/4 deck boards, what a mess! Thanks rustoleum restore[.]"[13]

42.     These are just a sample of the over 1,600 comments from consumers, the vast majority of whom are disappointed with the performance and efficacy of Rust-Oleum's Restore line of products.[14]

43.     Given its previous litigation and the hundreds of consumer complaints, Rust-Oleum knew or should have known that its Restore Products were faulty. Rust-Oleum nonetheless sold Restore Products to Plaintiff and consumers throughout Missouri. Rust-Oleum's marketing materials misrepresented the qualities of the Restore Products, and the company omitted or concealed its knowledge about the products' defective qualities.

44.     Had Plaintiff and consumers been aware of the defective nature of Restore Products, they would not have purchased Restore Products or would have paid far less money for them.

45.     In this respect, Plaintiff and consumers have been damaged because either (1) they paid for products with no value, or (2) they paid substantially more than the value of the product they received (i.e., they did not realize the benefit of their bargain). Under either determination, Plaintiff and consumers have been harmed by Rust-Oleum's conduct.

---

[12]     *Id.* (Stacy B.).
[13]     *Id.* (John E.).
[14]     *Id.*

9

## CLASS ACTION ALLEGATIONS

46.     Plaintiff seeks to represent the following Class:

**All persons who purchased Restore Products in Missouri
between October 17, 2014 to the present.**

47.     Excluded from the proposed class is Rust-Oleum; any affiliate, parent, or subsidiary of Rust-Oleum; any entity in which Rust-Oleum has a controlling interest; any officer, director, or employee of Rust-Oleum; any successor or assign of Rust-Oleum; anyone employed by counsel for Plaintiff in this action; any judge to whom this case is assigned, his or her spouse, and all persons within the third degree of relationship to either of them, as well as the spouses of such persons; members of the judge's staff; and anyone who purchased Restore Products for the purpose of resale.

48.     **Numerosity**. Rust-Oleum sells Restore Products in Missouri through major retailers. Members of the proposed class likely number in the hundreds or thousands and are thus too numerous to practically join in a single action. Class members may be notified of the pendency of this action by mail, supplemented by published notice (if deemed necessary or appropriate by the Court).

49.     **Predominance**. Common questions of law and fact exist as to all members of the proposed class and predominate over questions affecting only individual class members. These common questions include whether:

a.      Restore Products are defective;

b.      Rust-Oleum knew or should have known about the defects in Restore Products and, if so, when Rust-Oleum discovered them;

c.      Rust-Oleum disclosed the existence of the defects to potential customers;

d.      Rust-Oleum concealed the existence of the defect from potential customers;

10

e.      Rust-Oleum misrepresented the efficacy and true nature of Restore Products;

f.      Rust-Oleum's conduct harmed Plaintiff and the class;

g.      Plaintiff and the class are entitled to equitable relief, including declaratory relief, restitution, rescission, a preliminary and/or permanent injunction; and

h.      Plaintiff and the class are entitled to damages.

50.     **Typicality**.   Plaintiff's claims are typical of the claims of the proposed class. Plaintiff and the proposed class purchased Restore Products that contain the same defects, giving rise to substantially the same claims.

51.     **Adequacy**.  Plaintiff is an adequate representative of the proposed class because his interests do not conflict with the interests of the members of the class he seeks to represent. Plaintiff has retained counsel competent and experienced in complex class action litigation, and Plaintiff will prosecute this action vigorously by monitoring and directing the actions of class counsel.  The interests of members of the class will be fairly and adequately protected by Plaintiff and her counsel.

52.     **Superiority**.  A class action is superior to other available means for the fair and efficient adjudication of this dispute. The injury suffered by each class member, while meaningful on an individual basis, is not of such magnitude as to make the prosecution of individual actions against Rust-Oleum economically feasible. Even if class members themselves could afford such individualized litigation, the court system could not. In addition to the burden and expense of managing many actions arising from Rust-Oleum's Restore Products, individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties and the court system presented by the legal and factual issues

of the case. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

53.     In the alternative, the proposed class may be certified because:

a.     the prosecution of separate actions by the individual members of the proposed class would create a risk of inconsistent or varying adjudication with respect to individual class members which would establish incompatible standards of conduct for Rust-Oleum;

b.     the prosecution of separate actions by individual class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and

c.     Rust-Oleum has acted or refused to act on grounds generally applicable to the proposed class, thereby making appropriate final and injunctive relief with respect to the members of the proposed class as a whole.

**FIRST CAUSE OF ACTION**
**Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.***
**(Plaintiff individually and on behalf of the class)**

54.     Plaintiff, on behalf of himself and the proposed class, hereby re-alleges the paragraphs above as if fully set forth herein.

55.     Declaratory relief is intended to minimize "the danger of avoidable loss and unnecessary accrual of damages." 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2751 (3d ed. 1998).

56.     There is an actual controversy between Rust-Oleum and Plaintiff concerning:

a.     Whether Restore Products are defective thus causing them to fail;

b. Whether Rust-Oleum knew or should have known of the defects;

c. Whether Rust-Oleum misrepresented the nature and quality of Restore Products; and

d. Whether Rust-Oleum concealed and/or omitted the defective qualities associated with Restore Products.

57. Pursuant to 28 U.S.C. § 2201, the Court may "declare the rights and legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

58. Plaintiff seeks a declaration that Restore Products are defective as set forth herein. The defective nature of Restore Products is material and requires disclosure to all consumers who purchased them.

59. The declaratory relief requested herein will generate common answers that will settle the parties' controversy. There is an economy to resolving these issues as they have the potential to eliminate the need for continued and repeated litigation.

**SECOND CAUSE OF ACTION**
**Violation of the Missouri Merchandising Practice Act ("MMPA")**
**(Plaintiff individually and on behalf of the class)**

60. Plaintiff, on behalf of himself and the proposed class, hereby re-alleges the paragraphs above as if fully set forth herein.

61. The Missouri Merchandising Practices Act ("the MMPA") provides that "[t]he act, use or employment by any person of any deception . . . [or] unfair practice, or the concealment . . . of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce . . . is declared to be an unlawful practice." Mo. Rev. Stat. § 407.020.1.

62. The enabling regulations for the MMPA define an "unfair practice" as conduct that (1) offends public policy; (2) is unethical, oppressive, and unscrupulous; (3) causes a risk of

13

substantial injury to consumers; (4) was not in good faith; (5) is unconscionable; or (6) is unlawful. *See* Mo. Code Regs. Ann. tit. 15, § 60-8.

63.     Under the MMPA, the term "merchandise" is broadly defined to include "any objects . . . or services."  Mo. Rev. Stat. § 407.020.4. Rust-Oleum's Restore Products are "merchandise" within the scope of the MMPA.

64.     The MMPA authorizes private causes of action, and class actions.  Mo. Rev. Stat. §§ 407.025.1; 407.025.2. Plaintiff and members of the proposed class are individuals entitled to bring suit and recover under the MMPA.

65.     Plaintiff purchased his Restore Products for personal use at his residence.

66.     When Rust-Oleum designed, developed, manufactured, marketed, and sold Restore Products, it was involved in the conduct of trade and commerce under the MMPA.

67.     At the time Rust-Oleum developed, manufactured, marketed, and sold Restore Products, it knew or should have known that they were defective.

68.     Nonetheless, Rust-Oleum concealed its knowledge of the defects from consumers like Plaintiff and class members, and instead sold Restore Products as ordinary for normal use.

69.     Furthermore, Rust-Oleum misrepresented the characteristics of Restore Products.

70.     Rust-Oleum's misrepresentations, omissions and concealments of material fact constitute unfair and/or deceptive practices in violation of the MMPA.

71.     As a direct and proximate result of Rust-Oleum's unfair acts or practices alleged herein, Plaintiff and the class members were damaged.

## THIRD CAUSE OF ACTION
### Unjust Enrichment
### (Plaintiff individually and on behalf of the class)

72.     Plaintiff, on behalf of himself and the proposed class, hereby re-alleges the paragraphs above as if fully set forth herein.

73.     As a result of its wrongful and fraudulent acts and omissions, as set forth above, Rust-Oleum obtained monies that rightfully belong to Plaintiff and the class members to the detriment of the Plaintiff and the class members.

74.     Rust-Oleum appreciated, accepted and retained the non-gratuitous benefits (i.e. profits) conferred by Plaintiff and the class members who had no knowledge of the defective characteristics of Restore Products.

75.     Plaintiff and the class members either (1) paid a higher price for Restore products which actually had lower value or no value at all, or (2) paid Rust-Oleum monies for Restore Products that Plaintiff and the class members would not have purchased had they been aware of the defective characteristics of Restore Products.

76.     It would be inequitable and unjust for Rust-Oleum to retain these wrongfully obtained profits.

77.     Rust-Oleum's retention of these wrongfully-obtained profits would violate the fundamental principles of justice, equity, and good conscience.

78.     Plaintiff and the class are entitled to restitution of the profits unjustly obtained, plus interest.

15

## FOURTH CAUSE OF ACTION
### Breach of Implied Warranty of Merchantability
### (Plaintiff individually and on behalf of the class)

79.     Plaintiff, on behalf of himself and the proposed class, hereby re-alleges the paragraphs above as if fully set forth herein.

80.     Mo. Rev. Stat. § 400.2-314, which codifies section 2-314 of the Uniform Commercial Code ("UCC"), imposes an implied warranty of merchantability on the sale of goods by a merchant.

81.     Under Missouri law, a plaintiff may recover under the provisions of section 400.2-314 by proving:

a.      that a merchant sold goods;

b.      which were not "merchantable" at the time of sale;

c.      injury and damages to the plaintiff or his property;

d.      caused proximately and in fact by the defective nature of the goods; and

e.      notice to the seller of the injury.

*Metty v. Shurfine Cent. Corp.*, 736 S.W.2d 527, 530 (Mo. Ct. App. 1987).

82.     Under Mo. Rev. Stat. § 400.2-104, Rust-Oleum is a merchant because it is "a person who deals in goods of the kind."

83.     Under Mo. Rev. Stat. § 400.2-105, which codifies UCC section 2-105, Restore Products are a good, and Rust-Oleum's sale of Restore Products to Plaintiff was the sale of goods by a merchant.

84.     Under Mo. Rev. Stat. § 400.2-314, to be "merchantable" goods must be "fit for the ordinary purposes for which such goods are used."

85.     Because Restore Products are defective, they are unfit for its ordinary purposes.

16

86.     As a factual and proximate result of the defective nature of Restore Products, Plaintiff suffered injury and damages.

87.     Accordingly, Plaintiff is entitled to recover for Rust-Oleum's violation of Mo. Rev. Stat. § 400.2-314.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that the Court enter a judgment awarding the following relief:

a.     An order certifying the proposed class and appointing Plaintiff and his counsel to represent the class;

b.     An order awarding Plaintiff and the class members their actual damages, and/or any other form of monetary relief provided by and pursuant law;

c.     An order awarding Plaintiff and the class restitution, disgorgement or other equitable relief as the Court deems proper;

d.     An order awarding Plaintiff and the class pre-judgment and post-judgment interest as allowed under the law; and

e.     An order awarding Plaintiff and the class reasonable attorney fees and costs of suit, including expert witness fees.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all claims so triable.

DATED: October 17, 2019                    Respectfully submitted,

**WILLIAMS DIRKS DAMERON LLC**

        /s/ Matthew L. Dameron
Matthew L. Dameron (MO Bar No. 52093)
Amy R. Jackson (MO Bar No. 70144)
1100 Main Street, Suite 2600

17

Kansas City, Missouri 64105
Telephone:     (816) 945-7135
Facsimile:     (816) 945-7118
matt@williamsdirks.com
amy@williamsdirks.com

**Counsel for Plaintiff and the Proposed Class**